UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ERIC PARSONS,

           Petitioner,
                                   **DECISION AND ORDER**
                                   **No. 07-CV-6024T**

   -vs-

ROBERT ERCOLE,

           Respondent.

_____

### I. Introduction

*Pro se* petitioner, Eric Parsons ("Petitioner"), has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered May 6, 2003, in New York State, Seneca County, County Court, convicting him, after a jury trial, of five counts of Murder in the Second Degree (N.Y. Penal Law ("Penal Law") § 125.25[3]), and five counts of Arson in the First Degree (Penal Law § 150.20[1]).

For the reasons stated below, habeas relief is denied and the petition is dismissed.

### II. Factual Background and Procedural History

The charges arise out of an incident that occurred in the early morning hours of November 5, 2001 in Romulus, New York, wherein Petitioner intentionally started a fire in his wife's apartment that killed her and their four young children.

-1-

On November 3, 2001, Petitioner's wife, Cheryl Parsons ("Cheryl"), took their four children and moved to an apartment at 5692 Main Street in Romulus, New York. The following day, Petitioner appeared at her new apartment unannounced and uninvited, argued with her, and demanded that the children leave with him. Cheryl refused.

In the early morning hours of November 5, 2001, Petitioner intentionally started a fire in Cheryl's apartment, killing her and the four children who were inside the house at the time. Petitioner escaped from the fire unharmed.

Petitioner was arrested on November 28, 2001 after leading police on a high-speed car chase.

On April 12, 2002, Petitioner was indicted on five counts each of second degree murder (felony murder) and first degree arson.

Prior to trial, various suppression hearings were held.[1]

A jury trial was held before Judge Dennis F. Bender beginning February 24, 2003 and ending March 19, 2003.

At trial, various witnesses for the prosecution testified about the long history of domestic violence Cheryl suffered at the hands of Petitioner, and how she had moved to a new apartment with her children to escape his abuse and obtain a divorce from Petitioner. Trial Transcript [T.T.] 1983-2045, 2055-2162.

---

[1] Because Petitioner raises no challenges to the suppression hearings or decisions, the Court will not summarize them here.

Bobbie Sue Fox, the niece of Petitioner's sister's husband, testified that she was having a sexual relationship with Petitioner, and that he had moved some of his clothes and furniture into her apartment. She testified that Petitioner left her apartment on November 4, 2001 around noon, and did not indicate when he would be back, but asked her how many of his children could return with him to her apartment. She also testified that Petitioner had told her he was falling in love with her, and that he was getting divorced from Cheryl. T.T. 4068-80.

Various fire personnel also testified for the prosecution. Investigator Dale Moone ("Moone"), a fire investigator and canine handler in the New York State Office of Fire Prevention and Control ("OFPC"), testified that he brought his canine partner, Alex, who was trained to detect ignitable liquids, to search the scene for accelerants. T.T. 2880-83, 2902-05. Moone testified that Alex positively indicated the presence of accelerants in nine areas of the home. T.T. 2904-47. Moone and Alex also searched Petitioner's car, where ignitable liquid was found on the front side of the driver's seat and the driver's side floorboard. T.T. 2947-55.

Brian Meinweiser, a New York State Police Laboratory forensic scientist, testified that evidence from the scene and Petitioner's car were tested for heavy petroleum distillates and were recovered from Petitioner's jeans and sneakers, Cheryl's hair, and from one child's pajamas. T.T. 3031-68.

Leonard Hayes, a mechanical engineer of JDR Systems Corporation, testified that he tested a kerosene heater found in the kitchen area of Cheryl's home, and found it to be properly functioning. He determined that the kerosene heater was not the source of the fire because it had been externally damaged by the fire. T.T. 3075-3113.

Investigator Michael Knowlton ("Knowlton"), an OFPC fire protection specialist, was qualified as an expert for the prosecution, and testified that, based on the fire patterns inside the home, it was his opinion that the fire came from the rear bedroom and progressed toward the front of the structure, following an ignitable liquid trail that had been poured on the floor. T.T. 3160-3386. Knowlton also testified that, based on his investigation of the scene, he was able to eliminate all accidental and natural causes of the fire.

On November 7, 2001, Dr. Mary Jumbelic, the Onondaga County Medical Examiner, performed the autopsies on the five victims. A stipulation relating to the autopsies was read into the record stating that in each case, the cause of death was carbon monoxide intoxication due to the inhalation of smoke and soot from the house fire. T.T. 3499-500.

The defense's theory was that Petitioner was in the home when the fire started, but that the cause of the fire was unknown. Petitioner did not testify at trial.

The defense called Linda Van Curen, a former tenant at 5692 Main Street who testified that she had experienced problems with an electrical outlet when she lived at the premises, as well as the chain lock on the front door and unsafe steps leading out to the kitchen door. T.T. 4410-18.

Arlene Parsons, Petitioner's sister-in-law, testified that she had seen Petitioner and Cheryl several days before the incident, and that there did not appear to be problems between them. T.T. 4422-30.

Kenneth Gibson ("Gibson") testified for the defense as an expert in the field of fire cause and origin. Before Gibson testified, however, the prosecution brought to the trial court's attention, initially outside the presence of the jury, that Gibson had overstated his academic qualifications and the dates of those qualifications. Ultimately, Gibson was permitted to testify as an expert based on his experience, rather than his academic qualifications, which he had admittedly embellished. He testified that, based on his investigation of the scene, that he could not eliminate all accidental and natural causes of the fire. He further testified that the point of origin of the fire was in the basement, although he could not identify the ignition source. T.T. 4545-4841.

The jury found Petitioner guilty as charged, and he was sentenced to a concurrent indeterminate term of twenty-five years

to life in prison for each of the five second degree murder and the five first degree arson convictions. Sentencing Minutes 12.

Petitioner appealed his judgment of conviction to the Appellate Division, Fourth Department, which was unanimously affirmed. People v. Parsons, 30 A.D.3d 1071 (4th Dep't 2006). Leave to appeal to the New Court of Appeals was denied. People v. Parsons, 7 N.Y.3d 816 (2006).

No collateral motions were filed.

This habeas petition followed. All of Petitioner's claims are exhausted and are properly before the Court.

**III. General Principles Applicable to Habeas Review**

**A. The AEDPA Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court

decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a

State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B. Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984).

## C. The Adequate and Independent State Ground Doctrine

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" Dunham v. Travis, 313 F.3d 724, 729 (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted." Id. (citing Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v. Carrier, 477 U.S. 478, 496 (1986)).

Although the Supreme Court "has repeatedly cautioned 'that the [independent and adequate state law ground] doctrine applies to bar consideration on federal habeas of federal claims that have been defaulted under state law,'" Dunham, 313 F.3d at 729 (quoting Lambrix v. Singletary, 520 U.S. 518, 523 (1997) (emphasis added by Second Circuit), the Second Circuit has observed that "it is not the case 'that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be[,]'" id. (quoting Lambrix, 520 U.S. at 525 (stating that bypassing procedural questions to reach the merits of a habeas petition is justified in rare situations, "for example, if the [the underlying issue] are easily resolvable against the habeas petitioner, whereas the procedural-

bar issue involved complicated issues of state law")).

**IV. Petitioner's Claims**

**1. PETITIONER'S INSUFFICIENCY OF THE EVIDENCE AND PROSECUTORIAL MISCONDUCT CLAIMS ARE PROCEDURALLY BARRED**

Petitioner contends that the evidence was legally insufficient to support the first degree arson conviction in that the prosecution failed to prove Petitioner intentionally set the fire at his wife's apartment. In an unrelated claim, he asserts that the prosecutor committed misconduct on summation. Petition [Pet.] ¶12, Grounds One and Three. Petitioner raised these claims on direct appeal, and they were rejected on state procedural grounds for failure to properly preserve them. Parsons, 30 A.D.3d at 1072-73. The Appellate Division's reliance upon a state procedural rule to dismiss Petitioner's claims precludes federal habeas review of them. See Coleman, 501 U.S. at 729-30; Harris v. Reed, 489 U.S. 255, 260-61 (1989).

A habeas court may not review a federal issue when the last state court's ruling on the claim rested upon "a state law ground that is independent of the federal question and adequate to support the judgment." Coleman, 501 U.S. 722 at 729. It is well-settled law that New York's preservation rule (codified at CPL § 470.05(2)) is an independent and adequate state procedural ground. See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990); see also Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999). Here, the Appellate Division relied on CPL § 470.05(2) in finding that

Petitioner failed to properly preserve his legal insufficiency and prosecutorial misconduct claims. Both of these findings demonstrate that the state court's decision on these issues rested on an adequate and independent state procedural rule that bars habeas corpus review of them by this Court.

A finding of procedural default will "bar habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the claim will result in a miscarriage of justice." Coleman, 501 U.S. at 749-50 (internal citations omitted); accord, e.g., Fama v. Commissioner of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000). A petitioner establishes cause for a default when he shows that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray, 477 U.S. at 488. To satisfy the prejudice prong, petitioner must show not merely a possibility of prejudice, but that the alleged error worked to his actual and substantial disadvantage." Cappiello v. Hoke, 698 F. Supp. 1042, 1052 (E.D.N.Y. 1988) (internal quotation marks and citation omitted).

Here, Petitioner alleges ineffective assistance of counsel as the cause for the default. Pet. ¶13, Ground Four. A claim of ineffective assistance of counsel may establish cause for a procedural default. See, e.g., Edwards v. Carpenter, 529 U.S. 446,

451 (2000); McCleskey v. Zant, 499 U.S. 467, 494 (1991). However, "[n]ot just any deficiency in counsel's performance will do . . . . [T]he assistance must have been so ineffective as to violate the Federal Constitution . . . . Attorney error short of ineffective assistance of counsel . . . does not constitute cause and will not excuse a procedural default." Murray, 477 U.S. at 488-489. As discussed at Section "IV, 2" below, Petitioner cannot make out a successful ineffective assistance of counsel claim. Further, he makes no showing of the requisite prejudice. Moreover, Petitioner has not demonstrated how this Court's failure to review the claim will result in a miscarriage of justice.

Accordingly, the claims are dismissed.

**2. PETITIONER'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM LACKS MERIT**

Petitioner contends that he was denied his Sixth Amendment right to the effective assistance of counsel based on, *inter alia*, the following grounds: (1) that counsel failed to investigate his own expert witness; (2) that counsel failed to object to the prosecution's improper closing remarks; and (3) that counsel failed to properly preserve the issue of insufficiency of the evidence. Pet. ¶13, Ground Four. Petitioner raised this claim on direct appeal, and it was rejected on the merits.

It is well-settled that a petitioner claiming ineffective assistance of counsel must show that counsel's representation was

fundamentally defective, and that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668 (1984); Aparicio, 269 F.3d at 95. A petitioner seeking to establish constitutionally ineffective assistance of counsel must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see also, e.g., United States v. Jones, 918 F.2d 9, 11 (2d Cir. 1990) (holding that counsel's decisions should not be evaluated in hindsight). And, of course, counsel is "strongly presumed to have rendered adequate assistance and [to have] made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 689-90.

### a. Failure to Investigate Expert Defense Witness

First, Petitioner contends that he was deprived of his Sixth Amendment right to counsel when counsel failed to investigate the qualifications of his own expert witness (Gibson).

Indeed, the Supreme Court has determined that counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 690-91. However, there is nothing in the record that suggests counsel breached this duty. Rather, the

record reflects that counsel was given a resume in 2003 by Gibson, and Gibson's representations as to his expert status -- including his academic and work experiences -- appeared to be in order based on that resume. T.T. 4543. Furthermore, the record reflects that it was not until trial, after the People's case and after five defense witnesses testified, and immediately before Gibson was to testify, that the prosecutor informed the trial court that Gibson had embellished his resume. This was the first time that counsel became aware of the issue.[2] Upon learning of this information, counsel immediately requested a recess to confer with Gibson, and, after doing so, decided to put Gibson on as an expert witness, having him qualified based on his experience, rather than his education. If counsel had not done so, the jury would have been left with only the People's expert opinion that the fire was intentionally set. Thus, Petitioner has failed to overcome the presumption that, given the facts and circumstances, counsel's decision not to investigate Gibson's qualifications further before trial, or his subsequent decision to put Gibson on the stand after learning of the inaccuracies in Gibson's resume, was an unreasonable decision. Moreover, Petitioner cannot meet the prejudice prong of Strickland by showing that, but for counsel's alleged error, the outcome of the trial would likely have been

---

[2] In fact, counsel stated, on the record, "your Honor, this is all new to me." T.T. 4543.

different. Despite Gibson's academic misrepresentations, he was still qualified to testify as an expert based on his work experience. Based on this experience, he offered an alternative theory of how and where the fire started, effectively rebutting the prosecution's theory. Although Gibson's credibility may have been compromised based on his academic misrepresentations, his testimony was, nonetheless, consistent with counsel's overall theory that Petitioner did not start the fire that killed his wife and four children. To that extent, Gibson's testimony was not detrimental to Petitioner's case. Additionally, the Court notes that the evidence against Petitioner was overwhelming, and it is unlikely that the jury would have rendered a different verdict had counsel chosen not to put Gibson on the stand.

Accordingly, the claim is dismissed.

### b. Failure to Object to Prosecutor's Summation

Next, Petitioner contends that he received ineffective assistance of counsel because his attorney failed to object to the prosecution's allegedly improper closing remarks. Specifically, Petitioner argues, *inter alia*, that the prosecutor improperly injected his personal beliefs and denigrated the defense. This claim fails insomuch as the proposed objections would have been futile. See e.g., Duncan v. Griener, 1999 U.S. Dist. LEXIS 348, 97 Civ. 8754, (S.D.N.Y. Jan. 19, 1999) (since trial counsel's failure to object would have been fruitless, "the failure to so object is

not evidence of ineffective assistance of counsel"); Perez v. United States, 1997 U.S. Dist. LEXIS 16354, *9-10 (S.D.N.Y. Oct. 23, 1997) ("Defense counsel's failure to object, then, cannot have resulted in actual prejudice to petitioner, as the objection would have been meritless.").

Petitioner correctly asserts that it is improper for a prosecutor to interject personal beliefs into a summation. See United States v. Nersesian, 824 F.2d 1294, 1328 (2d Cir. 1987) (citing United States v. Young, 470 U.S. 1, 8-9 (1985). However, the challenged remarks must be evaluated in the context of the trial as a whole, for the government is allowed to respond to an argument that impugns its integrity or the integrity of the case. See United States v. Bagaric, 706 F.2d 42, 60-61 (2d Cir. 1983), cert. denied, 464 U.S. 840 (1983). Thus, when the defense has "attacked the prosecutor's credibility or the credibility of the government agents, the prosecutor is entitled to reply with 'rebutting language suitable to the occasion.'" United States v. Praetorius, 622 F.2d 1054, 1060-61 (2d Cir. 1979) (quoting United States v. LaSorsa, 480 F.2d 522, 526 (2d Cir. 1973), cert. denied, 414 U.S. 855 (1873)), cert. denied, 449 U.S. 860 (1980). In this case, the prosecutor's allegedly improper statements were made in a rebuttal context. The record shows that although the prosecutor characterized Petitioner's version of the truth as a "lie" on various occasions, such a characterization was made in direct

response to counsel's summation, which portrayed Petitioner's story as one that evinced "essential truths." T.T. 4907, 4924. Thus, Petitioner could not have suffered actual prejudice from his attorney's failure to object to the prosecutor's closing remarks, which were not improper under the circumstances.

Likewise, Petitioner's assertion that counsel was ineffective for failing to object to the prosecution's denigration of the defense -- namely by characterizing Gibson as a fraud -- is also without merit. Again, the prosecution's statements were made directly in response to counsel's assertion that, despite the fact that Gibson had misrepresented his academic qualifications, he could still give a "reliable opinion" based on his "decades of practical experience." T.T. 4894, 4955-58. Thus, Petitioner could not have suffered actual prejudice from counsel's failure to object to the prosecutor's remarks, which were not improper under the circumstances.

Accordingly, the claim is dismissed.

c.  **Failure to Properly Preserve Sufficiency Issue**

Finally, Petitioner contends that counsel was ineffective for failing to make a motion to dismiss at the close of all the evidence based on insufficiency of the evidence. Specifically, he contends that the prosecution failed to prove beyond a reasonable doubt that the fire was intentionally set, and that counsel was ineffective for failing to preserve this issue. For purposes of

-17-

effective assistance, not every possible motion need be filed, but rather, only those having a solid foundation. United States v. Afflerbach, 754 F.2d 866, 870 (10th Cir.), cert. denied, 472 U.S. 1029 (1985). Counsel certainly is not required to engage in the filing of futile or frivolous motions. Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984). Here, the record reflects that making a motion to dismiss at the close of the evidence based on insufficiency of the evidence would have likely been unsuccessful given the strength of the prosecution's case. That is, the evidence at trial established that: (1) Petitioner had fought with his wife the day before the fire over their children; (2) Petitioner made post-fire statements and admissions, evidencing his motive and identity as the individual who set the fire; (3) the fire was intentionally set based on nine areas where accelerants were found in the home; and (4) all accidental and natural causes of the fire were ruled out.

Because Petitioner cannot show that he has a meritorious claim, there is no reasonable probability that counsel's failure to properly preserve the insufficiency of the evidence issue affected the outcome of the trial. Accordingly, the claim is dismissed.

In sum, Petitioner's ineffective assistance of counsel claim lacks merit. Petitioner has failed to show that the state court's adjudication of this claim was contrary to or an unreasonable application of settled Supreme Court law. Habeas relief is

therefore unavailable to Petitioner.

## 3. PETITIONER'S CLAIM THAT EXPERT TESTIMONY WAS IMPROPERLY ADMITTED IS NOT COGNIZABLE

Petitioner contends that the trial court erred in allowing his own defense witness, Gibson, to testify as an expert after learning that Gibson had overstated his qualifications as an expert. Pet. ¶13, Ground Two. Petitioner raised this claim on direct appeal, and it was rejected on the merits. Although Petitioner has properly exhausted this claim, it does not present an issue that is cognizable by this Court on habeas review.

Federal courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Thus, it is outside the purview of this Court to determine whether the trial court erred in allowing Gibson to testify as an expert. Such a claim does not present a federal question for which habeas relief is available. See Estelle, 502 U.S. at 67-68 (1991).

Accordingly, the claim is dismissed.

**V. Conclusion**

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

                                        s/Michael A. Telesca
                                          MICHAEL A. TELESCA
                                United States District Judge

DATED:    March 8, 2010
             Rochester, New York